# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| AT&T CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMUNICATION WORKERS OF )<br>AMERICA, )<br>)<br>Defendant. ) | No. 4:07-CV-386 CAS |

## MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross motions for summary judgment. For the following reasons, the Court will grant defendant's motion and deny plaintiff's motion.

**I. Legal Standard**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving the cross motions for summary judgment.

## II. Facts

Plaintiff AT&T Corporation ("AT&T") is a national telecommunications company. Employees of AT&T are represented for purposes of collective bargaining by the defendant, Communications Workers of America ("CWA"). CWA and AT&T are parties to a collective bargaining agreement ("CBA") covering the terms and conditions of employment for the bargaining unit.

Article 10 of the CBA provides that the arbitrator shall determine in discipline cases whether discipline was for "just cause." Article 19.4 of the CBA states that "nothing herein shall be construed to subject the Employee Benefit Plans (or their successors) or their administration . . . to arbitration."

Jody Jensen was employed by AT&T as a communications technician in St. Louis, Missouri. Ms. Jensen received sickness and disability benefits through AT&T's Sickness and Accident Disability Benefit Plan ("the Plan"). MetLife was the administrator for claims under the Plan. MetLife administered the application of benefits and policies for each employee receiving benefits under the Plan.

The Plan allows for 52 weeks of disability leave. After this period expires, if the employee is still disabled, the employee is removed from AT&T's payroll.

On or about August 27, 2002, Ms. Jensen began a leave under the Plan for a non-work related condition. In April 2003, while still off work, Ms. Jensen was advised by MetLife that her disability benefit period would expire on August 25, 2003, and that she would no longer be an employee after that time. After an independent medical examination, Ms. Jensen returned to work on August 18, 2003 on a limited schedule. On October 10, 2003, Ms. Jensen suffered a relapse and was off work.

Because Ms. Jensen suffered a relapse of the previous absence, the 52-week benefit period under the Plan did not re-start, but rather continued from where it had previously ended. MetLife advised Ms. Jensen that her 52-week benefit period would now expire on October 24, 2003. MetLife also advised AT&T that October 24, 2003 was the end date for Ms. Jensen's benefit claim period and her last day on payroll. Ms. Jensen came to work on October 24, 2003. On October 28, 2003, Ms.

Jensen's supervisor, Mr. Kim Kline, spoke to Estelle Gonzalez, a disability case management specialist for MetLife, to determine Ms. Jensen's status.

Based on the record at the arbitration, Estelle Gonzalez told Mr. Kline that Ms. Jensen was not released by MetLife to return to work based on the medical documentation in MetLife's possession. See Ex. B, Hr'g Tr. at 48. Ms. Gonzalez testified that MetLife never received a return to work note from Ms. Jensen's doctor, Dr. Liss, with any supporting documentation. Id. at 51. Ms. Gonzalez testified that during a telephone conversation between a MetLife nurse and Dr. Liss's nurse, Dr. Liss's nurse said Ms. Jensen should be able to return to work. The nurse said not being able to return to work would worsen Ms. Jensen's condition. Id. at 60. MetLife's understanding was that Dr. Liss had not released Ms. Jensen to return to work, but the nurse had stated that Ms. Jensen should return to work. Id. at 61; 70-72. Ms. Gonzalez testified that MetLife needed a "return to work from the doctor as well as documentation to confirm how her condition had changed from [October 10] to the date that she was to return to work." Id. at 81.

After speaking with Ms. Gonzalez, Mr. Kline "initiated the off payroll process" for Ms. Jensen. Mr. Kline asked Ms. Jensen to physically leave the premises. Id. at 100. As the stated reason for Ms. Jensen's termination, Mr. Kline testified that "[h]er short-term disability had expired, 52 weeks. MetLife had not released her to return to work." Id. at 106-07.

CWA filed a grievance regarding Ms. Jensen's discharge, and on June 7, 2006, an arbitration hearing between AT&T and CWA was held in St. Louis. The parties selected Sara Adler to serve as the arbitrator. Arbitrator Adler issued her opinion and award, dated December 4, 2006. In her award, arbitrator Adler held that "the Company [AT&T] did not have just cause to dismiss Jody Jensen."

4

**III. Discussion**

The scope of judicial review of arbitration awards under collective bargaining agreements is highly deferential and extremely limited. See Amalgamated Transit Union, Local No. 1498 v. Jefferson Partners, 229 F.3d 1198, 1200 (8th Cir. 2000). The courts accord "an extraordinary level of deference" to the underlying award. See Boise Cascade Corp. v. Paper Allied-Indus. Workers, Local 7-0159, 309 F.3d 1075, 1080 (8th Cir. 2002) (stating what the Court would likely do "if we owed aught but maximum deference to the arbitrator's ruling"). "The Courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." Id. "In determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts being resolved in favor of the arbitrator's authority." Lackawanna Leather Co. v. United Food & Comm'l Workers Int'l Union, 706 F.2d 228, 230-31 (8th Cir. 1983) (en banc). An award must be confirmed even if a court is convinced the arbitrator committed a serious error, so "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Bureau of Engraving, Inc. v. Graphic Commc'n Int'l Union, Local 1B, 284 F.3d 821, 824 (8th Cir. 2002).

CWA moves for summary judgment and confirmation of the arbitrator's award, asserting that the award draws its essence from the CBA. AT&T argues that the award does not draw its essence from the CBA because the arbitrator exceeded her authority by ruling on the actions of the Plan administrator. AT&T states that under the CBA, the actions of the Plan administrator are not subject to review by an arbitrator. AT&T cites two prior arbitrations in which the arbitrators (including arbitrator Adler) acknowledged the limitation of authority imposed by Article 19.4. See Exs. G and

F. AT&T also argues the arbitrator disregarded and modified the unambiguous language of the CBA by reviewing the actions of the Plan administrator.

The relevant provisions of the parties' CBA are Article 10 and Article 19.4. See Ex. C. Article 10 states that "the right to require arbitration extends only to matters expressly set forth in this Article and which are not otherwise expressly excluded from arbitration." Ex. C. at Art. 10. Article 19.4 states "nothing herein shall be construed to subject the Employee Benefit Plans (or their successors) or their administration or the terms of the proposed change(s) in the Plan(s) to arbitration." Ex. C. at Art. 19.4.

The parties do not dispute that whether AT&T had just cause to terminate Ms. Jensen is an arbitrable matter. Nor do the parties dispute that the decisions of the Plan administrator are not arbitrable matters. The arbitrator is prohibited by the terms of the CBA from arbitrating "the Employee Benefit Plans . . . or their administration." Id. The parties disagree, however, as to whether arbitrator Adler's decision that AT&T had no just cause to terminate Ms. Jensen is a decision regarding the administration of the Plan. AT&T argues that the arbitrator's decision necessarily involved an interpretation of the Plan administrator's decision, and therefore the arbitrator exceeded her authority under the CBA. CWA argues the arbitrator's decision looked to the actions of AT&T, and not the Plan administrator, and therefore the arbitrator was within her authority under the CBA.

The Court has conducted a thorough review of the entire record in this case, including the opinion and award. Giving the award the extraordinary level of deference required, the Court cannot find that the arbitrator exceeded her authority under the CBA. Nor did she disregard and modify the unambiguous language of the CBA. Although arbitrator Adler's decision considers actions MetLife should have taken, the award does not rest on the actions and determinations of MetLife. The

6

decision properly frames the question as whether "[AT&T] could dismiss Ms. Jensen based on the orders of MetLife regardless of the fact that she returned to work in less than the full 52 weeks." Op. at 3. Ultimately the arbitrator found "Met-Life does whatever it does, but the Company is ultimately responsible for ensuring that its employees are treated fairly under the applicable rules." Id. at 4. The opinion states that the only reason for AT&T's dismissal was that Ms. Jensen did not return to work within the 52 weeks allowed. The arbitrator found that AT&T did not have just cause to dismiss Ms. Jensen for this reason because Ms. Jensen returned to work on the advice of her treating psychotherapist, and was permitted to work before the full 52 weeks had elapsed.

Although arbitrator Adler's opinion and award seems inconsistent with her prior opinion and award in the Hawkins arbitration (see Ex. G), she acknowledged and distinguished her prior opinion, and found it not controlling. The Court is not authorized to consider the merits of the arbitrator's decision, only whether she acted within her authority. See United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987). In construing the agreement broadly and resolving all doubts in favor of the arbitrator's authority, the Court finds that the arbitrator acted within her authority under the CBA, and her award draws its essence from that agreement.

## IV. Conclusion

For the foregoing reasons, the Court concludes that the Opinion and Award of Arbitrator Sara Adler, issued December 4, 2006, should be confirmed. As a result, the Court grants summary judgment in favor of defendant CWA and against plaintiff AT&T.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Communications Workers of America's motion for summary judgment is **GRANTED**. [Doc. 20]

**IT IS FURTHER ORDERED** that plaintiff AT&T Corporation's motion for summary judgment is **DENIED**. [Doc. 16]

**IT IS FURTHER ORDERED** that the Arbitrator's Opinion and Award by Arbitrator Sara Adler, dated December 4, 2006, in the matter entitled <u>In the Matter of Arbitration between Communication Workers of America and AT&T Corp.</u> in favor of defendant Communication Workers of America is **CONFIRMED** in all respects.

An appropriate judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this <u>3rd</u> day of January, 2008.